UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Richard Joseph Lagorio

    v.

Andrew Saul, Commissioner
of Social Security

Civil No. 19-cv-571-LM
Opinion No. 2020 DNH 170 P

**O R D E R**

Pro se plaintiff Richard Joseph Lagorio seeks judicial review of the decision of the Commissioner of the Social Security Administration denying his application for a period of child's disability benefits. Lagorio moves to reverse the Commissioner's decision, contending that the Administrative Law Judge ("ALJ") erred in finding that he engaged in substantial gainful activity after reaching the age of 22, making him ineligible for such benefits. The Administration moves to affirm.

Lagorio, who is currently sixty years old, seeks child's disability benefits retroactively to May 23, 2008, the date of his father's death. For an adult claimant like Lagorio to establish eligibility for child's disability benefits, he must demonstrate continuous disability between the date of his twenty-second birthday (in Lagorio's case, March 7, 1982) and the date he applied for benefits (here, June 29, 2016). For purposes of the Social Security Act, disability is defined in part as the inability to engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A).

During a period in 1999 and 2000, when he was 39-40 years old, Lagorio earned employment-related compensation in excess of the statutory threshold for establishing a rebuttable presumption of capacity to engage in substantial gainful

activity. On the sole basis of Lagorio's earnings during that period, the ALJ found that Lagorio had not been continuously disabled between the date of his twenty-second birthday and the date he applied for benefits. However, the ALJ failed to address or consider Lagorio's arguments that, notwithstanding his earnings, he lacked the capacity for substantial gainful employment. In addition, the ALJ disregarded much of the evidence Lagorio submitted to rebut the substantial gainful activity presumption. In light of the ALJ's failure to consider material legal questions and supporting materials, the ALJ's decision was not supported by substantial evidence. The Commissioner's decision is therefore reversed, and this case remanded to the Administration for further proceedings consistent with this opinion.

## STANDARD OF REVIEW

Lagorio brings this action pursuant to 42 U.S.C. § 405(g). In reviewing the final decision of the Commissioner under Section 405(g), the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. 42 U.S.C. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the

benchmark, a preponderance of evidence is not." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (citation omitted). Rather, the court "must uphold the Commissioner's findings if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support her conclusion." Id. (citation and internal modification omitted).

### CHILD'S DISABILTY BENEFITS

The child's benefits provisions of the Social Security Act (the "Act") "were enacted to protect any child financially dependent on an insured wage earner in the event that that wage earner becomes unable to continue providing for the child's support." Suarez v. Sec'y of Health & Human Servs., 755 F.2d 1, 3 (1st Cir. 1985) (citing Adams v. Weinberger, 521 F.2d 656, 659 (2d Cir. 1975)). For a child's disability benefits claimant over the age of 18 to be eligible for a period of benefits, the claimant (1) must be unmarried, (2) must be the child of a person insured under the Act who either has died or is entitled to disability benefits under the Act, (3) must have been financially dependent on that insured person at the time the person died or became eligible for benefits, and (4) must establish that he "is under a disability . . . which began before he attained the age of 22." 42 U.S.C. § 402(d)(1); 20 C.F.R. § 404.350.

For purposes of the Act, disability is defined in pertinent part as the "inability to engage in any substantial gainful activity" due to an impairment. 42 U.S.C. § 423(d)(1)(A). To establish eligibility for benefits, an adult child's disability

benefits claimant must therefore demonstrate "that he has suffered from a continuous, uninterrupted inability to engage in substantial gainful activity. . . from before age 22 through the date on which he applied for benefits." Maloney v. Barnhart, Case No. 05-CV-122-SM, 2006 WL 1134925, at *2 (D.N.H. Apr. 28, 2006) (citing Suarez, 755 F.2d at 3-4).

The Commissioner has promulgated regulations establishing a rebuttable presumption of capacity to engage in substantial gainful activity where a claimant's monthly employment earnings exceed a specified threshold. See 20 C.F.R. § 404.1574(b)(2). The applicable threshold is determined by reference to the year and the month in which the claimant worked.[1] See id.

A period of employment lasting six months or less may nevertheless be considered an unsuccessful work attempt, notwithstanding a claimant's earnings in excess of the applicable earnings threshold. See id. § 404.1574(c). Such a period of employment will be considered an unsuccessful work attempt, and will not constitute evidence of the claimant's ability to engage in substantial gainful activity, if two conditions are met. First, the claimant's impairments must have caused the claimant to stop working (or to stop receiving compensation above the minimum earnings threshold). See id. Second, the claimant must have been entirely

---

[1] For months falling between July 1999 through December 2000 (when Lagorio worked), the rebuttable presumption of capacity to engage in substantial gainful activity arises if a claimant earned more than $700 per month. See 20 C.F.R. § 404.1574(b)(2)(i).

4

out of work for at least 30 consecutive days both before and after any such period of employment. See id.

Moreover, where a claimant's work was performed under "special conditions" that accommodated the claimant's impairments, the fact that the claimant earned more than the minimum earnings threshold may be insufficient to establish that he was able to engage in substantial gainful activity. See id. § 404.1573(c). Such "special conditions" include, without limitation: the claimant's need for and receipt of special assistance from other employees in performing his job duties; permission for the claimant to take frequent rest breaks; and permission for the claimant to work at a lower standard of productivity or efficiency than other employees. See id.

The same five-step sequential evaluation process the Commissioner has established for determining whether a claimant is disabled applies when deciding whether a claimant is entitled to a period of child's disability benefits. See 20 C.F.R. § 404.1520(a)(2). Here, however, the only relevant step is the first step, at which the claimant has the burden to establish that he has not engaged in substantial gainful activity at any time after reaching the age of 22. See, e.g., Charles H. v. Berryhill, Case No. 2:17-CV-00273-DBH, 2018 WL 3493074, at *2 (D. Me. July 20, 2018) (adopted, No. 2:17-CV-273-DBH, 2018 WL 3857606 (D. Me. Aug. 14, 2018)); see also 42 U.S.C. § 402(d)(1); 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.350; 20 C.F.R. § 404.1520(a)(4)(i); Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

The ALJ here found that Lagorio had engaged in substantial gainful activity between reaching the age of 22 and applying for child's disability benefits. For that

reason, the ALJ's analysis ended at the first step. Thus, the court's analysis focuses only on whether the ALJ's findings at the first step are supported by substantial evidence and made according to the correct legal standards.

## BACKGROUND

Lagorio was born with a congenital degenerative bone disease on March 7, 1960. Lagorio's father died on May 23, 2008, when Lagorio was 48 years old.

In June 2014, Lagorio filed an application for Supplemental Security Income ("SSI") benefits alleging disability due to impairments caused by his bone disease. In September 2015, the Administration found that Lagorio had been disabled due to those impairments since September 1, 2001, and awarded him SSI benefits retroactively to that date.

On June 29, 2016, when he was 56 years old, Lagorio filed this application for child's disability benefits. Lagorio seeks child's disability benefits retroactively to May 23, 2008, the date of his father's death and the date he allegedly became eligible to receive such benefits.[2] In support of his application, Lagorio alleges that he is unmarried, that he was financially dependent on his father until his father's

---

[2] The long duration between the date Lagorio allegedly became eligible for child's disability benefits and the date he filed his application is immaterial to the court's review; a claimant entitled to a period of child's disability benefits may properly apply to receive such benefits at any time after becoming eligible to do so, without regard to the claimant's age. See, e.g., Stockford v. Soc. Sec. Admin. Com'r, Case No. 1:11-CV-00076-NT, 2012 WL 528128, at *2 (D. Me. Feb. 15, 2012) (aff'd sub nom. Stockford v. Astrue, Case No. 1:11-CV-76-NT, 2012 WL 899617 (D. Me. Mar. 15, 2012)).

death, and that his father had been insured under the Act when he died in 2008. Lagorio further alleges, for the first time, that for purposes of his child's disability benefits application his onset date for disability due to degenerative bone disease was not (as previously determined by the Administration in connection with his SSI application) September 1, 2001, but rather July 16, 1971.[3]

The Administration denied Lagorio's child's disability benefits application on August 16, 2016, and again on reconsideration on November 16, 2016. The Administration issued both denials on the same ground: that Lagorio had engaged in substantial gainful activity after reaching the age of 22. Lagorio requested a hearing before an ALJ for further reconsideration of his application. The hearing took place on December 11, 2017.[4] Lagorio testified at the hearing.

The ALJ issued an unfavorable decision on January 31, 2018. Admin. Rec. at 16-19. At the first step of the sequential process, he found that Lagorio had engaged in substantial gainful activity in 1999 and 2000. Id. at 18. Specifically, the ALJ determined that Lagorio had been employed by Stonyfield Yogurt ("Stonyfield") in two different positions during the seven-month period from December 1999 through June 2000, and that his earnings during this period exceeded the applicable

---

[3] On July 16, 1971, Lagorio was 11 years old. According to Lagorio's testimony, on that date he underwent hip surgery to address a slipped capital femoral epiphysis resulting from his bone disease. After the surgery he suffered from "constant and significant pain, stiffness and nerve damage from that point forward." Admin. Rec. at 73.

[4] Lagorio was represented by counsel at the hearing before the ALJ. However, Lagorio has not been represented by counsel at any stage of proceedings before this court.

statutory minimum threshold ($700 per month) to constitute substantial gainful activity for purposes of the Act. Id.

In support of this determination, the ALJ relied chiefly on an Administration-generated summary of Lagorio's yearly earnings for each of the years from 1991 through 2017, id. at 57 (the "Earnings Summary"),[5] and to a lesser extent on Lagorio's hearing testimony, id. at 143-156. Id. at 16-19. The administrative record reflects that the ALJ also had available to him a Work Activity Report, id. at 28-35, filed in support of Lagorio's application, as well as Lagorio's affidavit, id. at 73-108, submitted directly to the ALJ in advance of the hearing. Both the Work Activity Report and the affidavit contain evidence bearing on the circumstances, terms, and conditions of Lagorio's employment at Stonyfield. However, the ALJ did not consider them in connection with his conclusion that Lagorio's employment constituted substantial gainful activity. Id. at 16-19.

As the ALJ correctly noted, the Earnings Summary reflects that Lagorio received as income $5,266.87 in 1999 and $26,247.41 in 2000. Id. at 18; see also Earnings Summary at 57. The ALJ further noted that Lagorio testified to working for Stonyfield as a packer for approximately three months beginning in December 1999, and subsequently as a forklift operator for approximately four months. Admin. Rec. at 18, see also id. at 143-146, 154. On the sole basis of that evidence,

---

[5] Lagorio earned income only in 1991 and in 1999 through 2002. The amounts he earned in 1991 and in 2001-2002 were well below the applicable minimum earnings thresholds. See Earnings Summary.

8

the ALJ concluded that Lagorio engaged in substantial gainful activity during the seven-month period from December 1999 through June 2000.[6] See id. at 18. Accordingly, the ALJ found that Lagorio could not have been continuously disabled between reaching the age of 22 (in 1982) and the date he filed for child's disability benefits (in 2016), and therefore was not entitled to award of benefits. The ALJ ended the sequential process at the first step without making any further material findings.

On March 26, 2019, the Appeals Council denied Lagorio's request for review of the ALJ's decision. As a result, the ALJ's decision became the Administration's final order for purposes of judicial review. 20 C.F.R. § 422.210(a); see also, e.g., Sims v. Apfel, 530 U.S. 103, 107 (2000). This action followed.

## DISCUSSION

The sole issue on judicial review is whether the ALJ relied on substantial evidence and applied the correct legal standard in finding that Lagorio engaged in substantial gainful activity during 1999 and/or 2000. The ALJ correctly found that Lagorio earned more than the threshold $700 per month during months falling between July 1999 through December 2000. Admin. Rec. at 18. As noted, this

---

[6] The ALJ's opinion contains no discussion of whether Lagorio's employment at Stonyfield could have constituted two discrete unsuccessful work attempts under 20 C.F.R. § 404.1574(c)(1). See id. at 16-19. The opinion also contains no discussion of whether, in light of the conditions of his employment, Lagorio's jobs at Stonyfield were sufficient under 20 C.F.R. § 404.1573(c) to establish his capacity to engage in substantial gainful activity. See id.

finding gives rise to a rebuttable presumption that Lagorio had the capacity to engage in substantial gainful activity, see 20 C.F.R. § 404.1574(b)(2), and therefore was not continuously disabled between the age of 22 and his application filing date, see Maloney, 2006 WL 1134925 at *2. However, Lagorio offered arguments and supporting evidence that his employment at Stonyfield could have constituted two discrete unsuccessful work attempts, or alternatively that, due to special circumstances in the terms and conditions of his employment, his employment did not establish his capacity for substantial gainful activity. The ALJ failed to address or consider Lagorio's arguments that his earnings did not, under the circumstances, establish his capacity to engage in substantial gainful activity. The ALJ also failed to consider some of the material evidence of record. As discussed below, these failures constitute error warranting reversal and remand for further proceedings.

The court first addresses the ALJ's failure to address two material legal questions.

I. The ALJ Failed to Consider Whether Lagorio's Jobs at Stonyfield Constituted Unsuccessful Work Attempts and Whether Lagorio Worked Under Special Conditions

The ALJ committed reversible error by failing to consider two legal questions material to Lagorio's entitlement to benefits. Each of these questions bears directly on whether Lagorio's earnings in 1999 and 2000 established his capacity for substantial gainful activity.

First, the ALJ did not consider whether Lagorio's jobs at Stonyfield constituted unsuccessful work attempts. The ALJ considered Lagorio's testimony that he worked for Stonyfield as a packer for approximately three months beginning in December 1999 and subsequently as a forklift operator for approximately four months. Id. at 143-146, 154. However, Lagorio offered further testimony regarding his employment at Stonyfield that the ALJ did not address in his opinion. In addition to testifying that he worked in each position for less than six months, Lagorio also testified to an intervening period of approximately one to one and a half months between his two jobs at Stonyfield (during which time he pursued and obtained a certification required for the forklift operator position). Id. at 74-75, 146. He further testified to leaving both jobs due to his impairments. Id. at 74, 143-145. However, he did not offer testimony as to whether he received any form of compensation from Stonyfield during the interval between the two jobs.[7]

A period of employment of less than six months is treated as an unsuccessful work attempt if the claimant's impairments caused the claimant to stop working and the claimant was out of work for at least 30 consecutive days both before and after the period of employment. 20 C.F.R. § 404.1574(c). Although the record leaves some material questions unanswered, if Lagorio's testimony were credited it would support the conclusion that each of the Stonyfield jobs was an unsuccessful work

---

[7] The ALJ did not ask Lagorio any questions at the hearing regarding the interval between the two jobs. Lagorio's counsel likewise did not elicit testimony bearing on whether Lagorio was entirely out of work for at least thirty days between working as a packer and as a forklift operator.

attempt. The ALJ's failure to address the potential applicability of Section 404.1574(c) is therefore reversible error. See Mooney v. Shalala, 889 F. Supp. 27, 33 (D.N.H. 1994); Maloney, 2006 WL 1134925, at *6; 20 C.F.R. § 404.1574(c).

The second material legal question that the ALJ failed to consider also bears directly on Lagorio's capacity for substantial gainful activity. Specifically, the ALJ failed to consider whether Lagorio worked under special conditions at Stonyfield. He also failed to consider whether, in light of those conditions, his earnings do not establish his capacity for substantial gainful activity. Lagorio offered testimony regarding the conditions under which he worked at Stonyfield. Admin. Rec. at 74-75, 143-154. In brief, Lagorio testified to requiring and receiving special assistance from other employees in performing his job duties, requiring and taking frequent rest breaks, and being held to a lower standard of productivity than other employees. Id. Each of these accommodations constitutes a "special condition," the presence of which can indicate that a work effort does not establish capacity for substantial gainful activity. 20 C.F.R. § 404.1573(c). Pursuant to Section 404.1573(c), the ALJ was therefore obliged to consider whether, in light of these special conditions, Lagorio's employment at Stonyfield did not foreclose his eligibility for child's disability benefits. See id. The ALJ's failure to consider that question is also reversible error. See Mooney, 889 F. Supp. at 33; Maloney, 2006 WL 1134925, at *6; 20 C.F.R. § 404.1573(c).

II. <u>The ALJ Disregarded Material Evidence Bearing on Lagorio's Employment at Stonyfield</u>

In addition to the ALJ's failure to consider Lagorio's arguments and evidence on the question of substantial gainful activity, the ALJ disregarded other material evidence in the record. As noted, the ALJ's substantial gainful activity determination was premised solely on the information contained in the Earnings Summary and on limited portions of Lagorio's hearing testimony. Admin. Rec. at 18. However, as discussed below, the record contains additional evidence material to Lagorio's earnings in 1999 and 2000.

The first body of evidence the ALJ disregarded bears on the dates of Lagorio's employment at Stonyfield. The ALJ found that Lagorio worked for Stonyfield "from December 1999 to June 2000, for a total of seven months." Admin. Rec. at 18. That finding appears to be an inference derived from three of Lagorio's statements made at the hearing before the ALJ: (1) that his employment at Stonyfield began in December 1999, (2) that he worked for Stonyfield as a packer for approximately three months, and (3) that he subsequently worked for Stonyfield as a forklift operator for approximately four months. <u>Id.</u> at 143-146, 154. However, in drawing the inference that Lagorio worked for Stonyfield "from December 1999 to June 2000, for a total of seven months," the ALJ necessarily disregarded Lagorio's affidavit, in which Lagorio specified that he worked for Stonyfield through September 12, 2000. <u>Id.</u> at 75. The ALJ also necessarily assumed that Lagorio's three-month stint as a packer and four-month stint as a forklift operator were consecutive; that assumption likewise fails to take into account Lagorio's affidavit, which specifies

13

that the packer job ended in early March 2000 and that the forklift operator job did not begin until early April 2000. Id. at 74-75. The ALJ's assumption similarly fails to take into account Lagorio's hearing testimony that he spent a period of "a month, month and a half" pursuing a certification between working the two jobs. Id. at 146.

The ALJ also disregarded bodies of evidence bearing on the circumstances, terms, and conditions of Lagorio's employment at Stonyfield. The ALJ's opinion discusses Lagorio's annual earnings in 1999 and 2000 as reported in the Earnings Summary and estimates the monthly income attributable to his employment at Stonyfield. To be sure, this discussion was not necessary to support the ALJ's conclusion that Lagorio's total compensation in 1999 and 2000 exceeded the substantial gainful activity threshold. However, the ALJ's discussion does reveal that the ALJ disregarded material evidence while considering the record.

A few observations drawn from the record will illustrate the point. First, in discussing the possible total amount of Lagorio's earnings in December 1999, the ALJ "[a]ssum[ed] that [Lagorio] worked [for Stonyfield] all of the month of December 1999." Id. at 18. But the Work Activity Report states that Lagorio did not begin working for Stonyfield until December 27, 1999. Id. at 29. He thus worked at Stonyfield for, at most, five days of December 1999.

Second, based on his assumption that Lagorio worked for Stonyfield for the entire month of December 1999, the ALJ calculated that Lagorio "would have made at most $1,638.00" in that month. However, the Work Activity Report specifies that Lagorio received $450.55 from Stonyfield as compensation in December 1999. Id.

Had the ALJ considered the Work Activity Report, he would not have needed to try to calculate the amount of Lagorio's December 1999 earnings.

Third, the ALJ noted an apparent discrepancy between his own calculations of Lagorio's likely earnings and the annual compensation totals listed in the Earnings Report. Id. at 18. Specifically, the ALJ calculated that Lagorio's earnings from his employment at Stonyfield should have totaled "no more than $11,970.00," while the Earnings Summary reflects total earnings of $5,266.87 in 1999 and $26,247.41 in 2000. The ALJ appears to have been unable to account for this apparent discrepancy. Id. However, the discrepancy is at least partially explained by information contained in the Work Activity Report. Specifically, the Report states that Lagorio worked less than part time for D.M. Kerr Associates for ten months of 1999 before working for Stonyfield, id. at 29, and that after he left Stonyfield's employ, Lagorio continued receiving compensation from Stonyfield in the form of disability pay, profit-sharing, and a vacation-time payout, id. at 30. The ALJ's failure to acknowledge these reported sources of income in connection with his discussion of Lagorio's earnings illustrates that the ALJ failed to consider information contained in the Work Activity Report.

When a claimant offers material evidence, the ALJ is required to consider it. See, e.g., Petrucci v. Barnhart, Case No. 01-10682-DPW, 2003 WL 21715851, at *5 (D. Mass. July 23, 2003). The ALJ's failure to do so here constitutes clear error warranting reversal of the Commissioner's decision.

15

III.    <u>The Evidentiary Record is Undeveloped</u>

The record here is inadequate to permit a reasoned evaluation of the substantial gainful activity issue. Specifically, the record leaves unanswered questions regarding the exact dates of Lagorio's employment at Stonyfield, whether Lagorio was entirely off work between his stints as a packer and as a forklift operator, and, if so, for how long he was off work. As discussed above, these unanswered questions are directly material to evaluation of whether Lagorio's employment at Stonyfield constituted two unsuccessful work attempts. 20 C.F.R. § 404.1574(c).

An ALJ has a duty to develop the evidentiary record sufficiently to permit a reasoned evaluation of the issues presented by a claim for benefits. <u>See</u> Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991); <u>see</u> <u>also</u> Sims v. Apfel, 530 U.S. 103, 110–111 (2000) ("Social Security proceedings are inquisitorial rather than adversarial . . . [and] [i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits"); 20 C.F.R. § 404.944. This responsibility exists even as to issues on which the claimant bears the burden of proof, <u>see</u> Carrillo Marin v. Sec'y of Health & Human Servs., 758 F.2d 14, 17 (1st Cir. 1985), and applies "regardless of whether the claimant is represented by counsel," Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000). The ALJ's duty to develop the record applies in the context of the substantial gainful activity presumption. <u>See</u> Mooney, 889 F. Supp. at 33 ("when income establishes a presumption that one is engaged in substantial gainful activity, the presumption

16

does not relieve an ALJ of the duty to develop the record fully and fairly") (citations, internal modifications, and quotation marks omitted).

To warrant reversal, however, an ALJ's failure to develop the record must have caused the claimant material prejudice. See Faria v. Comm'r of Soc. Sec., 187 F.3d 621 (1st Cir. 1998). The claimant bears the burden to establish such prejudice. See id. In addition, the ALJ's duty to develop the evidence only arises where the record contains sufficient facts to alert the ALJ that further evidentiary development is necessary.[8] See May v. Bowen, 663 F. Supp. 388, 394 (D. Me. 1987).

Because the record suggests the possibility that Lagorio's employment at Stonyfield constituted two unsuccessful work attempts, the ALJ was under a duty to investigate the material facts and develop the record adequately. See Sims, 530 U.S. at 110-111; Currier v. Sec'y of Health, Educ. & Welfare, 612 F.2d 594, 598 (1st Cir. 1980) (citing Miranda v. Sec'y of Health, Educ. & Welfare, 514 F.2d 996, 998 (1st Cir. 1975)). However, the court declines to fault the ALJ for failing to seek further documentary evidence or to elicit relevant testimony at the hearing. First, although Lagorio is unrepresented in this action, he was represented by counsel at

---

[8] Here, the record contained facts sufficient to alert the ALJ that the evidence was materially incomplete, and that the evidentiary gaps could be filled without undue effort. At the hearing before the ALJ, Lagorio testified that he contacted Stonyfield to request information about his past employment. Admin. Rec. at 153. Stonyfield advised him that the only records they still retained regarding his employment were tax records, which Lagorio did not request prior to the hearing. Id. However, the tax records would presumably have contained information bearing on the material questions regarding the dates of Lagorio's employment and whether he received compensation from Stonyfield between his jobs as a packer and as a forklift operator. The ALJ did not request that Lagorio obtain the employment records after hearing Lagorio's testimony. Id.

the hearing. "When a claimant is represented, the ALJ 'should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored.'" Faria, 187 F.3d at 621 (quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)). "[A]n ALJ is entitled to presume that claimant represented by counsel in the administrative hearings has made his best case." Id. (quoting Sears v. Bowen, 840 F.2d 394, 402 (7th Cir. 1988)). The ALJ did not err in presuming that Lagorio's counsel would present all favorable material evidence as to a legal question on which Lagorio bore the burden of proof.

Second, Lagorio has made no effort to demonstrate that he was prejudiced by the ALJ's failure to develop the record. In particular, Lagorio has not offered any evidence to establish that, had the ALJ requested Stonyfield's employment records, those records would actually have supported his unsuccessful work attempt arguments.

While the undeveloped record is not a basis for reversal, the ALJ may consider filling the identified evidentiary gaps on remand.

IV. Summary

The record establishes, and the ALJ correctly found, that Lagorio earned above the minimum earnings threshold for substantial gainful activity during the period from December 1999 through some time in 2000. However, Lagorio's earnings give rise to only a rebuttable presumption that he had the capacity to engage in substantial gainful activity. See 20 C.F.R. § 404.1574(a). Lagorio was

entitled to produce evidence to demonstrate that, despite his earnings, he lacked that capacity. He did in fact produce a considerable body of material evidence. Although the ALJ was not required to draw any particular conclusion from Lagorio's evidence, he was obliged to consider it and to address the material facts and law in his opinion.

For these reasons, the court finds that the ALJ's decision is not supported by substantial evidence. The appropriate remedy is remand for further proceedings. See, e.g., Maloney, 2006 WL 1134925, at *6.

## CONCLUSION

For the foregoing reasons, Lagorio's motion to reverse (doc. no. 9) is granted, and the Commissioner's motion to affirm (doc. no. 10) is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings consistent with this order and, if the ALJ deems it appropriate, the taking of additional evidence and/or testimony. The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

September 30, 2020

cc: Counsel of Record